## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

| | | |
|---|---|---|
| **MICHAEL E. MARCUM,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 5:06-0527** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## M E M O R A N D U M   O P I N I O N

This is an action seeking review of the decision of the Commissioner of Social Security

denying Plaintiff's Application for disability insurance benefits (DIB) and Supplemental Security

Income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-

1383f. This case is presently pending before the Court on Plaintiff's Motion for Judgment on the

Pleadings filed on October 5, 2006 (Document No. 12.)[1], and Defendant's Brief in Support of his

---

[1] Plaintiff, by counsel, has submitted a Memorandum in Support of Judgment on the Pleadings or in the Alternative Remand. (Document No. 13.) Plaintiff's Memorandum is not in compliance with the District Court's Local Rule of Civil Procedure 9.4(b) which provides that

> The plaintiff's brief shall contain a statement of issues, a statement of the facts and an argument on each issue asserted. The statement of facts shall cite by transcript page number the evidence upon which the plaintiff relies. The argument on each issue shall identify the findings which are alleged not to be supported by substantial evidence, and other errors which are alleged to have been made with citations to the pertinent transcript pages and to relevant regulations, rulings and cases.

The Local Rule anticipates that each issue will be addressed independently and discretely with reference to the record and pertinent authorities. Plaintiff's Memorandum is six pages long. Page six contains only the signature of Plaintiff's attorney, Mr. Thompson. It contains statements of issues and facts and an argument section. The argument section of Plaintiff's Memorandum is two pages long. Each issue raised is not addressed independently and discretely. The argument section contains nothing more than assertions of error. It contains no meaningful analysis of the evidence or

Motion for Judgment on the Pleadings filed on November 3, 2006 (Document No. 14.). Both parties have consented in writing to a decision by the United States Magistrate Judge.

The Plaintiff, Michael E. Marcum (hereinafter referred to as "Claimant"), filed an Application for DIB on July 30, 2002. His claim was denied initially and upon reconsideration. By Decision dated August 5, 2003, Administrative Law Judge Theodore Burock determined that Claimant was not entitled to benefits. (Tr. at 24-D through L.) On February 26, 2004 (protective filing date), Claimant filed Applications for DIB and SSI claiming disability as of January 30, 2003. (Tr. at 59 - 61, 276 - 279.) The claims were denied initially and upon reconsideration.  (Tr. at 25 - 26, 34 - 36, 281 - 283, 285 - 287.) Claimant requested a hearing before an ALJ (Tr. at 38.), and the hearing was held by video teleconference on January 26, 2006, before the Honorable Gordon R. Malick. (Tr. at 290 - 315.) By Decision dated February 23, 2006, ALJ Malick determined that Claimant was not entitled to benefits.  (Tr. at 12 - 20.) Claimant requested review of the ALJ's Decision, and the ALJ's decision became the final decision of the Commissioner on May 16, 2006, when the Appeals Council denied Claimant's request for review.  (Tr. at 5 - 7.) On June 28, 2006, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 1.)

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ."

_____

discussion of the ALJ's findings and conclusions and why they are not supported by substantial evidence. It contains no citations to regulations or rulings and only one citation to a case which Plaintiff quotes incorrectly.

2

42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims.  20 C.F.R. § 404.1520 (1999).  If an individual is found "not disabled" at any step, further inquiry is unnecessary.  Id. § 404.1520(a).  The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment.  Id. § 404.1520(b).  If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment.  Id. § 404.1520(c).  If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.  Id. § 404.1520(d).  If it does, the claimant is found disabled and awarded benefits.  Id.  If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.  Id. § 404.1520(e).  By satisfying inquiry four, the claimant establishes a prima facie case of disability.  Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).  The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.  20 C.F.R. § 404.1520(f) (1999).  The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy.  McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§

3

404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1)Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
>
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
>
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.
>
> (4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth

(episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1). Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since the alleged onset date of disability. (Tr. at 18, Finding No. 2.)  Under the second inquiry, the ALJ found that Claimant's morbid obesity, gouty arthritis, depression and anxiety were severe impairments. (Id., Finding No. 3.) At the third inquiry, the ALJ concluded that Claimant's medically determinable impairments did not meet or medically equal the level of severity of any listing in Appendix 1, Subpart P, Regulation No. 4. Considering

the "B" and "C" criteria for mental impairments, the ALJ concluded that "the claimant has mild restrictions of daily activities; mild difficulty maintaining social functioning; mild difficulty maintaining concentration, persistence or pace; and has never had episodes of decompensation. He does not require a highly supportive living arrangement; and minimal changes in environment are not expected to cause decompensation. (Id., Finding No. 4.) The ALJ then found that Claimant had the residual functional capacity to "lift up to twenty pounds occasionally and ten pounds frequently; could stand and/or walk up to two hours in an eight hour day; could sit up to six hours in an eight hour day (with ability to alternate positions at least every two hours); could occasionally climb, balance, stoop, kneel, crouch, and crawl; should avoid extreme cold and vibration. Additionally, due to the claimant's mental impairments, he would be limited to simple unskilled work." (Tr. at 19, Finding No. 6.) The ALJ found that Claimant was unable to perform his past relevant work. (Id., Finding No. 7.) The ALJ found that Claimant was a "younger individual" with a high school education, no transferable skills and the residual functional capacity to perform a significant range of sedentary work. (Id., Finding Nos. 8 - 11.) Based upon the testimony of a vocational expert, the ALJ found that a significant number of jobs existed in the regional and national economy which Claimant could perform. (Id., Finding No. 12.) On this basis, benefits were denied.  (Tr. at 20.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence.  In Blalock v. Richardson, substantial evidence was defined as

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Cellebreze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence.  Hays v.Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational."  Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

Claimant's Background

Claimant was born on November 19, 1965, and was 40 years old at the time of the administrative hearing, January 26, 2006. (Tr. at 59, 294.) Claimant has a high school education and training in diesel mechanics. (Tr. at 294.) In the past, he worked as a utility man taking care of belt line in the coal mines, a supermarket/grocery store stocker and a construction laborer. Claimant was also in the Army and was a light wheel vehicle mechanic. (Tr. at 64, 295, 298 - 302.)

The Medical Record

The Court has reviewed all evidence of record, including the medical evidence, and will discuss it further below as necessary.

Claimant's Challenges to the Commissioner's Decision and the Commissioner's Response.

Claimant asserts that ALJ Malick erred as follows (Document No. 13, p. 3.):

1.    in failing to consider all impairments of the Plaintiff both physical and psychological, and finding that a combination thereof would sustain a finding of disability.

2.    in failing to develop testimony from the Plaintiff regarding Plaintiff's complaints of pain or other subjective symptoms related to his physical disabilities.

3.      in not postponing the hearing thus enabling him to make personal observations of the Plaintiff at his administrative hearing.

Claimant states further that "the vocational Expert . . . struggled to find even a range of sedentary work available to the Plaintiff and the Administrative Law Judge himself found that the Plaintiff's capacity to engage in ' . . . all or substantially all of the requirements of sedentary work is impeded by additional and/or non-exertional limitations.'" (Id., p. 4.) Claimant also emphasizes that the Vocational Expert indicated that a low number of certain jobs existed in the national and regional economies which Claimant could perform. (Id., p. 5.)

The Commissioner responds that substantial evidence supports the ALJ's determination that Claimant was not disabled.

## ANALYSIS

I.      Consideration of Claimant's Impairments in Combination.

The Social Security Regulations provide as follows:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.

20 C.F.R. § 416.923 (2004). Where there is a combination of impairments, the issue "is not only the existence of the problems, but also the degree of their severity, and whether, together, they impaired the claimant's ability to engage in substantial gainful activity." Oppenheim v. Finch, 495 F.2d 396, 398 (4th Cir. 1974). The ailments should not be fractionalized and considered in isolation, but considered in combination to determine the impact on the ability of the claimant to engage in substantial gainful activity. Id. The cumulative or synergistic effect that the various impairments have on claimant's ability to work must be analyzed. DeLoatche v. Heckler, 715 F.2d 148, 150 (4th

8

Cir. 1983.)

Claimant asserts without reference to the evidence or the ALJ's decision that the ALJ failed to consider his impairments in combination. Claimant does not specify how the ALJ failed to consider the severity of his impairments in combination. It is clear that the ALJ considered Claimant's impairments in combination as he applied the sequential analysis. The ALJ determined that "the medical evidence indicates that the claimant has morbid obesity, gouty arthritis of multiple joints, depression and anxiety; impairments that are 'severe' within the meaning of the Regulations but not 'severe' enough to meet or medically equal, *either singly or in combination*, one of the impairments listed in Appendix 1, Subpart P, Regulation No. 4." (Tr. at 14, Emphasis added.) The ALJ then stated that "as indicated in SSR 02-1p, obesity may have an adverse impact upon co-existing impairments. For example, obesity may affect the cardiovascular and respiratory systems, making it harder for the chest and lungs to expand and imposing greater burden upon the heart. Someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected for arthritis alone. In addition, obesity may limit an individual's ability to sustain activity on a regular and continuing basis during an eight-hour day, five-day week or equivalent schedule. *These considerations have been taken into account in reaching the conclusions herein.*" (Id., Emphasis added.) The ALJ considered Claimant's physical and mental impairments in determining his residual functional capacity and assessing his ability to perform his past relevant work indicating limitations attributable to them as reflected in the record. (Tr. at 16.) At level five of the sequential analysis, The ALJ presented a hypothetical question to the Vocational Expert designating limitations which Claimant experienced as a consequence of his physical and mental impairments. (Tr. at 308 - 309.) It appears therefore that the ALJ considered Claimant's

impairments in combination at every level of the sequential analysis. Claimant's assertion that the ALJ did not is without merit.

II.    Testimony Respecting Claimant's Pain and Subjective Symptoms.

Aside from his assertion that the ALJ failed to develop testimony from him regarding his pain and symptoms, Claimant's only other statement in the two-page argument section of his six-page Memorandum in Support of Motion for Judgment on the Pleadings or in the Alternative Remand (Document No. 13.) is that "[a]s stated in the decision of the Administrative Law Judge he found the Plaintiff's allegations of pain to be partially credible." Claimant then quotes incorrectly from the Fourth Circuit's decision in Walker v. Brown, 889 F.2d 47, 49 (4th Cir. 1989), that "[t]he law does not require objective measurement of the intensity of the pain, only that there be clinically objectifiable medical reasons for the pain." Claimant makes no reference whatever to the evidence or transcript of the administrative hearing. The Commissioner responds that Claimant's pain and symptoms are relieved by medications and treatment; Claimant's subjective complaints of pain are not supported by objective evidence of record; the ALJ nevertheless "exercised caution in finding such a restrictive RFC"; and the ALJ's conclusions respecting Claimant's limitations are consistent with Claimant's reports of his activities of daily living. (Document No. 14, pp. 10 - 11.)

A two-step process is used to determine whether a claimant is disabled by symptoms/pain. First, objective medical evidence must show the existence of a medical impairment that reasonably could be expected to produce the symptoms/pain alleged. 20 C.F.R. §§ 404.1529(b) and 416.929(b) (1999); SSR 96-7p; See also, Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). If such an impairment is established, then the intensity and persistence of the symptoms/pain and the extent to which it affects a claimant's ability to work must be evaluated. Id. at 595. When a claimant

proves the existence of a medical condition that could cause symptoms/pain, "the claimant's subjective complaints [of pain] must be considered by the Secretary, and these complaints may not be rejected merely because the severity of pain cannot be proved by objective medical evidence." Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994). Objective medical evidence of symptoms/pain should be gathered and considered, but the absence of such evidence is not determinative. Hyatt v. Sullivan, 899 F.2d 329, 337 (4th Cir. 1990). A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4) (1999).  Additionally, the Regulations provide that:

> [w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons. . . . Factors relevant to your symptoms, such as pain, which we will consider include:
>
> (i) Your daily activities;
>
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms.
>
> (iii) Precipitating and aggravating factors;
>
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
>
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
>
> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and
>
> (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

11

20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) (1999.

SSR 96-7p repeats the two-step regulatory provisions:

First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the individual's pain or other symptoms. * * * If there is no medically determinable physical or mental impairment(s), or if there is a medically determinable physical or mental impairment(s) but the impairment(s) could not reasonably be expected to produce the individual's pain or other symptoms,
the symptoms cannot be found to affect the individual's ability to do basic work activities.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities.  For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7p, 1996 WL 374186 (July 2, 1996). SSR 96-7p provides further as follows:

Policy Interpretation: A symptom is an individual's own description of his or her physical or mental impairment(s). Once the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce pain or other symptoms has been established, adjudicators must recognize that individuals may experience their symptoms differently and may be limited by their symptoms to a greater or lesser extent than other individuals with the same medical impairments and the same medical signs and laboratory findings. Because symptoms, such as pain, sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, any statements of the individual concerning his or her symptoms must be carefully considered if a fully favorable determination or decision cannot be made solely on the basis of objective medical evidence. If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms. The adjudicator must then make a finding on the credibility of the individual's statements about symptoms and their functional effects.

Significantly, SSR 96-7p requires the adjudicator to engage in the credibility assessment as early as step two in the sequential analysis; i.e., the ALJ must consider the impact of the symptoms on a claimant's ability to function along with the objective medical and other evidence in determining whether the claimant's impairment is "severe" within the meaning of the Regulations. A "severe" impairment is one which  significantly limits the physical or mental ability to do basic work activities.  20 C.F.R. §§ 404.1520(c) and 416.920(c).

Craig and SSR 96-7p provide that although an ALJ may look for objective medical evidence of an underlying impairment capable of causing the type of pain alleged, the ALJ is not to reject a claimant's allegations solely because there is no objective medical evidence of the pain itself. Craig, 76 F.3d at 585, 594; SSR 96-7p ("the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record"). For example, the allegations of a person who has a condition capable of causing pain may not be rejected simply because there is no evidence of "reduced joint motion, muscle spasms, deteriorating tissues [or] redness" to corroborate the extent of the pain.  Id. at 595. Nevertheless, Craig does not prevent an ALJ from considering the lack of objective evidence of the pain or the lack of other corroborating evidence as factors in his decision. The only analysis which Craig prohibits is one in which the ALJ rejects allegations of pain solely because the pain itself is not supported by objective medical evidence.

In view of error it found in the ALJ's pain analysis, the Craig Court remanded, stating its reasoning as follows:

> [T]he ALJ did not expressly consider the threshold question of whether Craig had demonstrated by objective medical evidence an impairment capable of causing the degree and type of pain she alleges. Instead, the ALJ proceeded directly to considering the credibility of her subjective allegations of pain. . . . Accordingly, we

13

> remand to the ALJ to determine whether Craig has an objectively identifiable medical impairment that could reasonably cause the pain of which she complains. If the ALJ concludes that she does, then, and only, then, should it undertake an assessment into the credibility of Craig's subjective claims of pain.

Craig, 76 F.3d at 596. Relying upon this language in Craig, this Court remanded in Hill v. Commissioner of Social Security, 49 F.Supp.2d 865, 869 (S.D.W.Va. 1999) (Hallinan, J.), for consideration of the threshold issue in the pain analysis over the Commissioner's contention that it would be a waste of judicial and administrative resources because Mr. Hill would still be found not disabled. Judge Hallinan stated as follows:

> For the Court to make a determination when reviewing whether the ALJ's decision is supported by substantial evidence, the Court expects those below to conduct a full and intensive review of the record. Justice and fairness demands nothing less. To say that the results would be the same upon a second, more comprehensive review and explanation of the record, and therefore should not be done at all, would be to deny the Claimant his right to a fair decision, and in addition, deny the Court of a fully developed record of review.

Hill, 49 F.Supp.2d at 870. In Arnold v. Barnhart, Civil Action No. 1:04-0422 (S.D. W.Va. Sept. 29, 2005), this Court further held that Craig mandates "that an ALJ must make an *explicit* determination that a claimant has or has not proven an underlying medical impairment that could cause the pain alleged by the claimant." Id. at 11.

> [T]he ALJ's failure to expressly reach a conclusion regarding the first part of the pain disability test, the threshold question of whether a claimant has "an underlying medical impairment that could reasonably be capable of causing the pain alleged," constitutes a failure to apply the correct legal standard in determining that a claimant is not disabled by pain.

Id. at 14. See also Bradley v. Barnhart, 463 F.Supp.2d 577, 581 - 582 (S.D.W.Va. 2006) (remanding for the ALJ's failure to consider the threshold question of Craig prior to considering the credibility of her subjective allegations).

14

The record in this case contains a March 15, 2004, Personal Pain Questionnaire. (Tr. at 78 - 82.) Claimant stated then that he experienced pain continuously in his ankles, knees, elbows and back. He stated that he was taking medications which made him dizzy, groggy and sleepy. Claimant indicated that he was limited in his activities outside of his home. Claimant related his activities and limitations consistently in a Function Report dated October 25, 2004. (Tr. at 90 - 97.) He indicated that he experienced continuous pain in his back, knees, elbows and especially feet and side effects from his medications in a Personal Pain Questionnaire of the same date. He stated that walking, standing and sitting caused his pain or made it worse. (Tr. at 98 - 102.) Podiatrist Dr. Tim Donatelli indicated that upon examining Claimant on January 16, 2004, he found "pain on palpation of the ankle joint, and also pain on [range of motion]." (Tr. at 151.) A Diagnostic Imaging Report indicates "diffuse soft tissue swelling" of Claimant's right ankle and "soft tissue swelling" of Claimant's left ankle on January 20, 2004. (Tr. at 206, 256.) Dr. Donatelli stated in an undated note that "[m]y patient Michael Marcum has the following diagnosis, gouty arthritis, chronic ankle sprain, and capsulitis. Due to this chronic condition I do not foresee any improvement in the future. This condition gets worse as it progresses instead of better." (Tr. at 152.) On June 13, 2004, Dr. Andres Rago conducted a Disability Determination Evaluation. (Tr. at 166 - 170, 236 - 240.) Dr. Rago found that Claimant had "chronic pain in both ankles, knees and left elbow as well as chronic low back pain." (Tr. at 168.) Dr. Rago observed that Claimant "has difficulty getting up from a sitting position and cannot squat. He cannot walk in his heels and toes and has difficulty getting into and off the examination table. Prolonged sitting aggravate[s] the pain at the lower back and both knees and he alternately stand[s] and sit[s] down to alleviate the lower back pain. (Tr. at169.) Dr. Rago stated in his assessment that Claimant "needs to change positions alternating standing and sitting to alleviate the lower back pain. He has difficulty getting into and out of the examination table and claimed to

15

be having difficulty getting up and down steps. He prefers to be standing more often to feel comfortable. " (Tr. at 170.) Notwithstanding Dr. Rago's findings, a DDS physician concluded on July 11, 2004, that Claimant could occasionally climb stairs, balance, stoop, kneel, crouch and crawl. (Tr. at 176.) A July 28, 2004, X-ray Report of Dr. Eli Rubenstein indicates "[t]he soft tissues appear normal. * * * There is no evidence of fracture or dislocation." (Tr. at 182, 244.) Dr. James Egnor completed a Physical residual Functional Capacity Assessment form on January 11, 2005, concluding, among other things, as the DDS physician had before that Claimant could occasionally climb stairs, balance, stoop, kneel, crouch and crawl. (Tr. at 210.)

ALJ Malick referred to 20 C.F.R. §§ 404.1529 and 416.929 and SSR 96-7p stating that "the undersigned must consider all symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence . . .." (Tr. at 15.) The ALJ stated further that "[t]he undersigned must also consider any medical opinions, which are statements from acceptable medical sources, which reflect judgments about the nature and severity of the impairments and resulting limitations . . .."ALJ Malick then stated as follows (Id.):

> The undersigned finds the claimant's allegations partially credible. It is reasonable to assume that the claimant's obesity and gouty arthritis would significantly affect his ability to stand and walk for prolonged periods. Additionally, his arthritis in his elbows would limit his ability to lift and carry. However, there is nothing in the record to support a conclusion that the claimant would be unable to sit for prolonged
>
> periods. He in fact, spends most of his day sitting. He watches TV, reads, and plays video games. He occasionally goes to sporting events of his children.

The Court finds that ALJ Malick's consideration of Claimant's symptoms and pain is not in conformity with the applicable regulations and decisions as discussed above. While the ALJ's statement that Claimant's obesity and gouty arthritis could affect Claimant's ability to walk and stand

16

might suffice for a threshold finding of medical impairments which could reasonably cause the symptoms which Claimant alleged, the ALJ does not address Claimant's complaints of pain at all. He does not discuss Claimant's allegations of pain and the medical evidence. For example, the ALJ does not discuss Dr. Rago's observation that Claimant cannot squat and the DDS physicians' opinion that he could occasionally crouch and crawl and explain why he adopted the opinion of the non-examining physicians over that of Dr. Rago who examined Claimant. It also does not appear that the ALJ took into account Dr. Rago's statement that Claimant prefers to stand to alleviate back pain. This evidence appears to undermine the ALJ's conclusion that "there is nothing in the record to support a conclusion that the claimant would be unable to sit for prolonged periods." For all of these reasons, the Court finds that the ALJ's findings and conclusions respecting Claimant's symptoms and pain are not supported by substantial evidence. This matter must be remanded for further proceedings in consideration of Claimant's subjective statements of his symptoms and pain and the side effects of his medications and the observations and opinions of medical sources, a reassessment of his residual functional capacity and level five analysis.

  III. <u>Proceedings by Video Teleconference.</u>

  Plaintiff states that "[a]lthough Plaintiff's attorney requested a delay in the hearing in order to allow for the personal appearance of the Administrative Law Judge due to Plaintiff's attorney's assessment that Plaintiff's appearance would have a favorable impact upon the ALJ towards a finding of disability, this was not arranged. Had the Administrative Law Judge been present in person to observe the Plaintiff he would have seen the pronounced swelling in Plaintiff's ankles, which swelling profoundly affects Plaintiff's mobility. He would have personally observed the Plaintiff's 435 pound estimated weight {height 5'10"} which undersigned counsel believes would

have obviated against the Administrative Law Judge's evaluation of the evidence that the Plaintiff retained the residual functional capacity to 'occasionally climb, balance, stoop, kneel, crouch and crawl; had these observations been made counsel for the Plaintiff believes that there should not have been a finding that Plaintiff retained residual functional capacity in these areas . . ..." (Document No. 13, pp. 3 - 4.)

The Regulations provide that "the administrative law judge determines whether your appearance . . . will be made in person or by video teleconferencing." 20 C.F.R. §§ 404.936(c) and 416.1436(c). The Regulation states that "[i]f you object to the time or place of your hearing, you must notify the administrative law judge at the earliest possible opportunity before the time set for the hearing." 20 C.F.R. §§ 404.936(d) and 416.1436(d). It is further provided that "[i]f you have been scheduled to appear by video teleconferencing at the place of your hearing and you notify the ALJ as provided in paragraph (d) of this section that you object to appearing in that way, the ALJ will find your wish not to appear by video teleconferencing to be a good reason for changing the time or place of your scheduled hearing and will reschedule your hearing for a time and place at which you may make your appearance before the administrative law judge in person." 20 C.F.R. §§ 404.936(e) and 416.1436(e). *See also* Skinner v. Astrue, 478 F.3d 836, 842 - 843 (7th Cir. 2007).

On February 15, 2005, Claimant filed a Request for Hearing by Administrative Law Judge indicating that he wished to appear at a hearing. (Tr. at 38.) By letter dated March 11, 2005, the SSA notified Claimant's attorney of its receipt of Claimant's request. (Tr. at 40 - 41.) ALJ Malick sent Claimant a Notice of Hearing dated November 16, 2005, indicating that he had scheduled the administrative hearing for January 26, 2006, to be held by video teleconference. The ALJ's Notice stated that "[i]f you do not want to appear at your hearing by video teleconference, please return the

acknowledgment form with a check in the block that says 'I do not want to appear at my hearing by video teleconference. Please reschedule my hearing so that I may appear before you in person.' * * * If you object to appearing by video teleconferencing, but do not timely notify me of your objection, I will consider whether you had a good reason for the delay in deciding whether I should reschedule the hearing." (Tr. at 54.) Claimant submitted the Acknowledgment of Receipt (Notice of Hearing) on November 22, 2005, indicating that he would be present at the time and place shown in the Notice of Hearing. Claimant did not indicate that he did not want to appear by video teleconference. (Tr. at 21.) It appears that the ALJ acted in conformity with the applicable Regulations in designating that the administrative hearing would be held by video conferencing subject to objection by Claimant.  The Court finds no indication in the record that Claimant made a timely objection to proceeding with the administrative hearing by video teleconference.

IV. <u>Number of Jobs in the Regional and National Economies.</u>

In response to the ALJ's hypothetical question, the Vocational Expert found that Claimant could perform the jobs of hand packer with 335 existing regionally and 13,800 nationally; inspector and tester with 410 existing regionally and 15,328 nationally; and protective worker or monitor screening security worker with 421 regionally and 14,099 nationally.

The Fourth Circuit has indicated that as few as 110 jobs may constitute a significant number of jobs for purposes of the burden of proof in these cases. <u>See</u> <u>Hicks v. Califano</u>, 600 F.2d 1048, 1051 n.2 (4th Cir. 1979). The numbers of jobs existing in the national and regional economies found by the Vocational Expert in this case suffice to defeat Claimant's claim for benefits.

Based upon a thorough examination of the evidence of record and careful reading of ALJ Malick's decision in view of the applicable Rules, Regulations and case law, the Court finds as

stated above that the Commissioner's decision that Claimant is not entitled to DIB or SSI is not in conformity with all applicable legal standards and supported by substantial evidence of record. Accordingly, by Judgment Order entered this day, the Plaintiff's Motion for Judgment on the Pleadings (Document No. 12.) is **GRANTED**, Defendant's Motion for Judgment on the Pleadings (Document No. 14.) is **DENIED**, the final decision of the Commissioner is **VACATED,** this case is **REMANDED** to the Commissioner for further proceedings as aforesaid and removed from the docket of this Court.

The Clerk of this Court is directed to provide copies of this Order to all counsel of record.

ENTER: September 21, 2007.

R. Clarke VanDervort
United States Magistrate Judge